UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
CIVIL DIVISION

_____ )
                               )
**Dana Miller**                )
**6300 Brooklane Dr.**         )
**Clinton, Maryland 20735**    )
                               )
    **Plaintiff,**   )   Civil Action No. _____
                               )
v.                             )
                               )   **DEMAND FOR JURY TRIAL**
**Washington Metropolitan Area** )
**Transit Authority**          )
**600 5th Street, N.W.**       )
**Washington, DC 20001**       )
                               )
and                            )
                               )
**Frank Johnson**              )
**2013 Browns Lane**           )
**Ft. Washington, MD 20744**   )
                               )
    **Defendants**   )
_____ )

**COMPLAINT OF DISCRIMINATION IN EMPLOYMENT**

INTRODUCTION

    1.    This complaint alleges discrimination in employment due to the plaintiff's gender. Specifically, plaintiff was subjected to a hostile work environment and sexual harassment while employed by the defendant Washington Metropolitan Area Transit Authority ("WMATA"). Furthermore, plaintiff was terminated in retaliation for filing a complaint of discrimination with the defendant WMATA's internal office of human rights.

JURISDICTION

Page 1

2.  Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), et. seq.  This Court has jurisdiction over this matter pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et. seq. and the D.C. Human Rights Act, D.C. Code § 2-1402.11.  Jurisdiction is proper in this Court because Plaintiff's claims arise out of her employment by the defendant WMATA; which is an entity with its principal place of business in the District of Columbia.

### VENUE

3.  Venue is proper in this district pursuant to 42 U.S.C. § 2000e5 (f) and 28 U.S.C. § 1391 (b) & (c).  Plaintiff's claims arose in both Maryland and the District of Columbia.  However, the majority of her claims arise and occurred at the defendant's principal place of business.  Additionally, all relevant records pertaining to plaintiff's claims are in the District of Columbia where the defendant WMATA's principal place of business is located.

### PARTIES

4.  Plaintiff Dana Miller was employed by the defendant, Washington Metropolitan Area Transit Authority (WMATA) as a special police officer until her termination in June 2004.

5.  Defendant WMATA is a corporation that provides mass transit services in the greater Washington, D.C. metropolitan area.  WMATA services and has business locations in Washington, D.C., Maryland and Virginia.

6.  Defendant Frank Johnson was employed by defendant WMATA as a lieutenant police officer and was the immediate supervisor over plaintiff during her employment.

### FACTS

7. Plaintiff Dana Miller was employed by WMATA as a special police officer in July 2003. As a special police officer, one of her duties was to serve as a guard at various stations and facilities across WMATA's service area.

8. On January 21, 2004 during the 3pm - 11pm evening shift, the Plaintiff was assigned to staff a security station at the Shady Grove Yard Post. While on duty at that booth, she proceeded to make use of a combination TV/Radio.

9. Around 8:00 pm that evening, defendant Frank Johnson, her supervisor, reported to the Shady Grove Yard Post to deliver some mouse traps. When he arrived he noticed the TV/radio and instructed the Plaintiff that it was against WMATA policy to have the TV/Radio at her workstation. He went on to request that she write a report stating that she had violated the policy so that it could be turned in and her misconduct could be properly documented.

10. Plaintiff followed the instructions of her supervisor and completed the report.

11. Plaintiff indicated to defendant Johnson that she was a probationary employee and requested that he give her an oral warning instead of anything written because she was afraid that she may lose her job if she was given a written reprimand. Plaintiff and defendant Johnson were aware that an oral reprimand in this situation was possible.

12. Defendant Johnson then asked Plaintiff what she was going to do after work and asked her to come to his house later that evening for sex in exchange for not turning in the written incident report. He also told Plaintiff that, if she came to his home to see him after work, he would give her the write up and she could tear it up.

13. At around 9:00pm, while defendant Johnson was still at the post, Lt. Tisdale, another supervisor called to the booth. Plaintiff answered the phone and Lt. Tisdale requested to speak with defendant Johnson. Defendant Johnson ordered Officer Miller to

lie to Lt. Tisdale and say that Defendant Johnson was not with her. Officer Miller complied with the order from Lt. Johnson. Before leaving the booth, Lt. Johnson asked Officer Miller for her phone number and she gave it to him. Shortly after this exchange, Lt. Johnson left the yard.

14. After defendant Johnson left the post, Plaintiff called her mother, Deborah Miller, who is also a WMATA Special Police Officer, to ask her advice as to how to report the incident. Deborah Miller told her daughter to report the incident immediately. Deborah Miller then called and reported the incident to the Chief Jerry Lee. She got his voice mail but decided not to leave a message. She also called her cousin Joseph Acres, a former WMATA Special Police Officer who told her to get pictures of everything that would transpire that night for later proof.

15. Deborah and Dana Miller met later that evening to attempt to catch defendant Johnson in the act of completing his scheme. While in route to meet her mother, plaintiff received a call from defendant Johnson on her cell phone telling her to meet him at a gas station that was down the street from his home. Plaintiff proceeded to meet defendant Johnson with her mother hiding in the back seat of her car. Plaintiff then followed defendant, who was in his own car, to his home at 2013 Brown Lane.

16. Plaintiff parked her car on the street while she proceeded in to defendant Johnson's home. Defendant Johnson did not realize that Deborah Miller was in the backseat of the car. Deborah Miller took pictures of his car and his home.

17. When Plaintiff entered the house, defendant Johnson asked to take her coat at which time, without her consent, he unbuttoned plaintiff's coat and he fondled her breast. Plaintiff's mother then rang the doorbell and defendant Johnson opened the door. When he opened the door, he told Mrs. Miller to come in. Plaintiff's mother told Lt.

Johnson that he was in violation of WMATA harassment polices and that he couldn't use the write-up to make Plaintiff have sex with him. Plaintiff and her mother then left the residence.

18. Plaintiff and her mother then immediately called and reported the incident to Chief Jeri Hall's voice mail. Chief Hall received that message the next morning not long after he got to work.

19. That same morning, plaintiff called the Office of Civil Rights (OCR) at WMATA to report the incident, and she spoke to Devan Walker. She had a meeting with both Walker of OCR and also with Captain Highland of WMATA Internal Affairs Department. She subsequently filed a formal complaint with OCR on January 28, 2004.

20. Plaintiff filed a criminal complaint with Prince George's County Police in Maryland against defendant Johnson on February 6, 2004.

21. On April 30, 2004, OCR did conclude that there was probable cause to find that defendant Johnson did sexually harass Plaintiff.

22. On June 1, 2004, defendant WMATA terminated the plaintiff's employment. The reasons given for the termination were plaintiff's violation of the work rule prohibiting the use of the television at her post. This reason is a pretext as other similarly situated employees were not treated in the same way.

23. Plaintiff filed a complaint with the Federal EEOC Office on June 23, 2004.

24. The EEOC issued a right to sue letter on September 8, 2005.

## COUNT I:

## Quid Pro Quo Sexual Harassment

25. The allegations in paragraphs 1-24 are incorporated herein by reference. By defendant Johnson requesting sex in exchange for not turning in the incident report, both

defendants engaged in quid pro quo sexual harassment in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et. seq. as well as the D.C. Human Rights Act, D.C. Code § 2-1402.11 (2005).

## COUNT II:
### Hostile Work Environment Sexual Harassment

26. The allegations in paragraphs 1-25 are incorporated herein by reference. By propositioning the plaintiff for sexual favors and fondling her breast, defendants sexually harassed the plaintiff by creating a hostile work environment in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et. seq. as well as the D.C. Human Rights Act, D.C. Code § 2-1402.11 (2005).

## COUNT III:
### Retaliation
### (Defendant WMATA Only)

27. The allegations in paragraphs 1-26 are incorporated herein by reference. By terminating the plaintiff's employment because she filed a complaint of harassment, defendant WMATA retaliated against the plaintiff in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et. seq. and the D.C. Human Rights Act, D.C. Code § 2-1402.11 (2005).

## COUNT IV:
### Battery
### (Defendant Johnson Only)

28. The allegations in paragraphs 1-27 are incorporated herein by reference. By fondling plaintiff's breast, without her consent, defendant Johnson engaged in civil battery.

**WHEREFORE,** plaintiff requests the following equitable and legal relief:

a. That the Court issue a declaratory judgment holding that defendants have discriminated against plaintiff on the basis of gender by subjecting her to a hostile work environment;

b. That the Court issue a declaratory judgment holding that defendants have discriminated against plaintiffs on the basis of sex by subjecting her to quid pro quo sexual harassment;

c. That the court issue a declaration directing defendant WMATA not to discriminate against its employees on the basis of their gender;

d. That the Court issue a declaratory judgment holding that defendants violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et. seq. and the D.C. Human Rights Act, D.C. Code § 2-1402.11 by retaliating against the plaintiff for filing a claim under the acts.

e. That the Court order:

    1. the defendant WMATA to retroactively reinstate the plaintiff to her position as a special police officer effective to the date of her termination;

    2. that the defendants provide back pay with interest retroactive from the date of her termination to the date of the award;

    3. that plaintiff's benefits be adjusted to reflect all applicable pay increases and promotions due retroactive to the date of her termination;

f. Compensatory and punitive damages to be determined by the jury;

g. Reasonable attorney's fees and costs;

h. Such other relief as the Court deems equitable.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all claims.

                                Respectfully submitted,

                                _____
                                E. Lindsey Maxwell II, Esq.  DC Bar No. 480035
                                Perennial Law Group, LLP
                                1455 Pennsylvania Ave., NW
                                Suite 225
                                Washington, DC 20004
                                (202) 638-5090 (p)
                                (202) 638-5564 (f)

December 7, 2005