IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANA MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 05-2342 (RMC) |
| v. ) | |
| ) | |
| WASHINGTON METROPOLITAN AREA ) | |
| TRANSIT AUTHORITY, et al., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1. Dana Miller (hereinafter, the "Plaintiff") was hired on July 21, 2003 as a Special Police Officer with the Defendant Washington Metropolitan Area Transit Authority (hereinafter WMATA). As a condition of her employment, she was required to serve a one-year probationary period under the Collective Bargaining Agreement. See Exhibit 16: Plaintiff Miller's Response to Defendant WMATA's Requests for Admission ("Plt. Admissions") at ¶ 1. The primary duty of Special Police Officers is to serve as guards at a variety of WMATA facilities within the WMATA transit zone.

2. Effective September 1, 1998, 5 years before the Plaintiff was hired with WMATA, General Order 218 outlined the MTPD's sexual harassment policy which covered both the Metro Transit Police and the Special Police Officers. On July 23, 2003, the Plaintiff began orientation and training for her position as a Special Police Officer, wherein she was made aware of the WMATA sexual harassment policy. See Exhibit 16: Plt. Admissions at ¶ 2. The Plaintiff was a Special Police Officer from July 21, 2003 to June 1, 2004. See Exhibit 12: General Order 218 of the Metro Transit Police.

3. On July 23, 2003, the Plaintiff received the following training documents: (1) General Post Instructions; (2) Special Police Rules & Regulations; (3) Metrorail Safety Rules & Regulations (General Rules & Rules of Conduct); (4) General Order- SPO 225 (Appearance, Uniforms & Equipment) and (5) General Order- SPO 230 (Tardiness). See Defendant's Exhibit 1: Training Documents; Exhibit 2: General Post Instructions.

4. General Post Instruction No. 10 states, "[Y]ou will not have televisions, radios, cassette players, reading materials or similar items other than authorized instructions on your post at any time." The Plaintiff was aware of this order. See Exhibit 2: General Post Instructions. See also Exhibit 16: Plt. Admissions at ¶ 11.

5. General Post Instruction No. 24 states, "[F]ailure to obey the special police regulations constitutes an offense which may require severe administrative action." Included, as an example under this general post instruction, is "unsatisfactory attendance." See Exhibit 2.

6. On May 10, 2000, 3 years before Plaintiff was hired, Deputy Chief Daniel Hall, head of the Special Police, allowed radios to be used on certain post provided that "[a]bsolutely no combination Radio/Televisions would be allowed on post." See Exhibit 3: May 10, 2000 Memorandum.

7. On December 29, 2003, less than six months into the Plaintiff's probationary employment with WMATA, Hall produced a memo to the Plaintiff detailing her fourth incident of tardiness within 3 months and recommending a one-day suspension without pay. The Plaintiff and Hall both agreed, as evidenced by the Plaintiff's signature on January 28, 2004, to move the suspension date from January 11, 2004 to February 12, 2004. See Exhibit 4: December 29, 2003, Memo from Hall to SPO Miller.

8. On December 29, 2003, Hall produced a memo to the Plaintiff detailing the results of an Internal Investigation into the Plaintiff's unauthorized absence of 2 hours from her assigned post at the Alexandria S & I Yard. The Report initially recommended a two-day suspension, without pay, on January 15 and 16, 2004. By agreement of the Plaintiff and Hall evidenced by Plaintiff's signature, the suspension was changed to a one-day suspension, without pay, effective February 5, 2004. See Exhibit 5: December 29, 2003 Memo from Hall to SPO Dana Miller Memo.

9. On January 16, 2004, the Plaintiff received her Mid-Year Performance Evaluation from Hall that cited numerous violations by the Plaintiff of WMATA and MTPD/SPO Rules and Regulations, including excessive tardiness, not reporting to assigned post during an inclement weather emergency and an abandonment of the Plaintiff's assigned post for 45 minutes. Each incident referenced was not challenged by the Plaintiff, as evidenced by her signature acknowledging each incident referenced in the evaluation. See Exhibit 6: January 16, 2004 Memo from Hall to SPO Dana Miller, subject: Mid-Year Evaluation of SPO Dana Miller. See also Exhibit 16: Plt. Admissions at ¶ 15, 16, 17, 18, 19, 21, 22, and 23.

10. The Plaintiff signed, dated and executed each listed violation referenced in the January 16, 2004 Mid-Year Evaluation, including the paragraph which stated, "[Y]our attendance and sense of responsibility is such that you are deemed unreliable," and " [I]t is in the best interest of [WMATA] to terminate your employment." See Exhibit 6. See also Exhibit 16: Plt. Admissions at ¶ 15, 25, 26.

11. Although the Mid-Year Evaluation recommended the Plaintiff for immediate termination, Deputy Chief Hall, in lieu of termination, allowed the Plaintiff a second chance by

3

giving the Plaintiff 90 days to improve her performance. Hall stated that, if her file had "any type of disciplinary action within the next ninety (90) days, it would mean her termination." See Exhibit 13: Transcript of Record at pg. 26, ln. 3-18, Testimony of Daniel Hall, Amalgamated Transit Union, Local 689 v. WMATA (Jan. 18, 2005) (L. Clark, Arb.). See also Exhibit 6. See also Exhibit 16: Plt. Admissions at ¶ 26.

12. On January 21, 2004, Special Police Lt. Franklyn Johnson was sent by Metro Transit Police Lt. Donna Tisdale to the Shady Grove S & I Yard guard post to deliver two mousetraps. When Special Police Lt. Johnson arrived at Shady Grove, he found the post unmanned and observed a combination Radio/Television on the counter, in direct violation of SPO General Post Instruction No. 10. See Exhibit 7: May 3, 2004, Memo from Hall to Chief Polly L. Hanson (hereinafter, "Chief Hanson"), subject: Violation of Post Instructions by Special Police Officer Dana Miller; see also Exhibit 8: January 21, 2004, Memo from Officer Dana Miller to MPTD Special Police Lt. Johnson, subject: TV/Radio in Booth.

13. On January 21, 2004, the Plaintiff returned to her abandoned post and encountered Special Police Lt. Johnson, who inquired about the Television/Radio combination. The Plaintiff acknowledged in writing that the Television/Radio was hers. See Exhibit 8; see also Exhibit 9: January 30, 2004 Written Statement by Dana Miller; see also Exhibit 10: June 1, 2004, Memo from Chief Hanson to SPO Dana Miller, subject: Letter of Termination. see also Exhibit 16: Plt. Admissions at ¶ 14.

14. According to the Plaintiff, on January 21, 2004, after she learned that Special Police Lt. Johnson had observed her violation of SPO General Post Instruction No. 10, Special Police Lt. Johnson invited the Plaintiff to his home. The Plaintiff alleged that Special Police Lt.

Johnson offered to tear up Plaintiff's memo, admitting that the TV/Radio on her post belonged to her, in exchange for her coming over his house later that evening. See Exhibit 9.

15. On January 21, 2004, the Plaintiff, along with her mother, Metro Transit Police Officer Deborah Miller, followed Special Police Lt. Johnson to his home. Plaintiff entered the residence first, followed very shortly by her mother. Both the Plaintiff and her mother asked Special Police Lt. Johnson for the "paperwork" that admitted the Plaintiff's violation of General Instruction No. 10. This gathering at Special Police Lt. Johnson's home was very short. Shortly, thereafter, Plaintiff and her mother left his residence without said "paperwork." See Exhibit 9.

16. Neither the Plaintiff nor her mother reported Special Police Lt. Johnson's allegedly inappropriate conduct, as required by WMATA's sexual harassment policy before going to his residence to retrieve the Plaintiff's statement. They did not report the events detailed in paragraph 15, until after they left Special Police Lt. Johnson's residence without the "paperwork." WMATA's Office of Civil Rights determined that Metro Transit Police Officer Deborah Miller violated WMATA's Sexual Harassment policy by failing to report the events. See Exhibit 9. See also Exhibit 14: April 30, 2004, Memo from CIVR Cynthia L. Myers to Chief Hanson.

17. On January 28, 2004, the Plaintiff filed a charge of sexual harassment against Special Police Lt. Johnson with WMATA's Office of Civil Rights. WMATA's Office of Civil Rights asked Deputy Chief Hall not to take any disciplinary action against the Plaintiff for the possession of the TV/Radio in her working booth pending the outcome of their investigation. See Exhibit 12: Officer Dana Miller's Charge of Discrimination; See Exhibit 13: Transcript of

Record at pg. 35, ln. 4-15, Testimony of Daniel Hall, Amalgamated Transit Union, Local 689 v. WMATA (Jan. 18, 2005) (L. Clark, Arb.).

18. At the conclusion of the Office of Civil Rights investigation, sufficient evidence was found to support a probable cause of sexual harassment by Special Police Lt. Johnson against the Plaintiff. However, the memo also found that the Plaintiff violated WMATA polices and procedures as well, including having a Television/Radio on her post on the January 21, 2004. See Exhibit 14.

19. In a memo by Deputy Chief Hall to Metro Transit Police Chief Polly Hanson, the reasons for the Plaintiff's termination were detailed including a finding by the Plaintiff's own admission, that she had violated General Post Instruction No. 10, by having a TV/Radio at her assigned post 5 days after the Plaintiff signed her Mid-Year Evaluation addressing her poor overall job performance, giving her 90 days to improve her performance or face termination of her employment, and warning her that any further violations of the rules could be grounds for termination. The memo recommended the Plaintiff's termination. The Plaintiff acknowledged her receipt of that memo, in writing. See Exhibit 7.

20. A termination letter, detailed the reasons for the Plaintiff's termination, including the results of her Mid Year Evaluation describing her "unsatisfactory performance" during her probationary period, and the fact that she violated General Post Instruction No. 10 by having an "unauthorized television on post" within the 90 day "final chance" period extended by Deputy Chief Hall. See Exhibit 10.

21. By letter dated June 3, 2004, Metro Transit Police Chief Hanson terminated Special Police Lt. Johnson for his unprofessional conduct and violation of WMATA polices and

procedures.  See Exhibit 15: June 3, 2004, Memo from Chief Hanson to Special Police Lt. Johnson, subject: Letter of Termination.

                Respectfully submitted,

                WASHINGTON METROPOLITIAN AREA
                TRANSIT AUTHORITY


                Carol B. O'Keeffe
                General Counsel


                _____/s/_____
                Mark F. Sullivan
                D.C. Bar # 430876
                Bruce P. Heppen
                D.C. Bar # 252171
                Michael K. Guss
                D.C. Bar # 465171
                600 5th Street, NW #2D-05
                Washington, D.C.  20001
                (202) 962-2373

                Attorneys for Defendant WMATA