IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANA MILLER, | ) |
| Plaintiff, | ) ) ) |
| | ) C.A. No. 05-2342 (RMC) |
| v. | ) ) |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al., | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Washington Metropolitan Area Transit Authority (WMATA) hereby issues its opposition to Plaintiff's Motion for Summary Judgment, pursuant to FED. R. CIV. P. 56. Plaintiff's Motion for Summary Judgment should be denied because (1) the Plaintiff cannot establish a prima facie case of sexual harassment in violation of Title VII under a *quid pro quo* or hostile work environment theory, (2) the Plaintiff cannot show that WMATA's legitimate, non-discriminatory and non-retaliatory reason for terminating her employment was merely pretext, considering that the Plaintiff admitted to the very conduct that resulted in her termination and (3) the Plaintiff cannot establish a causal connection between her protected activity and her termination in support of her retaliation claim.  In Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001), the Supreme Court made clear that an employer is free to carry out a ongoing appropriate adverse employment action contemplated, but not yet definitively determined, although the final action does not take place until after the Plaintiff has engaged in protected activity.

The basis for Defendant's opposition to Plaintiff's Motion for Summary Judgment are more fully set forth in the accompanying points and authorities.

Respectfully submitted,

WASHINGTON METROPOLITIAN AREA
TRANSIT AUTHORITY

Carol B. O'Keeffe
General Counsel


_____/s/_____
Mark F. Sullivan
D.C. Bar # 430876
Bruce P. Heppen
D.C. Bar # 252171
Michael K. Guss
D.C. Bar # 465171
600 5th Street, NW #2D-05
Washington, D.C.  20001
(202) 962-2373

Attorneys for Defendant WMATA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANA MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 05-2342 (RMC) |
| v. | ) |
| | ) |
| WASHINGTON METROPOLITAN AREA | ) |
| TRANSIT AUTHORITY, et al., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT WMATA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I. Plaintiff's Statement of Undisputed Facts Contains Omissions and Bald Assertions Not Supported by Evidence.

Plaintiff's affidavit concerning the events that transpired on the evening of January 21, 2004 are somewhat correct, however, the Plaintiff asserts bald allegations unsupported by evidence in regards to the job responsibilities of Lt. Franklyn Johnson, her job performance and WMATA's policies governing the job performance of its Special Police Officers.

Lt. Johnson was not the Plaintiff's supervisor. Lt. Johnson did not participate in the decision to hire, demote, discipline or fire the Plaintiff. Deputy Chief Daniel Hall had the sole power to approve the hiring, firing, demotion, promotion, discipline and/or transfer of Special Police Officers under his command. Although lieutenants under his command would recommend certain actions be taken against an officer, it was Deputy Chief Hall's decision to either accept or disregard the recommendation.

Although it was Lt. Johnson who spotted the Plaintiff's violation of General Post Instruction No. 10 by having a combination Television/Radio on her post, the eventual decision

to terminate the Plaintiff was made solely by Deputy Chief Hall, who made that decision because the Plaintiff committed an admitted workplace violation warranting disciplinary action within the 90-day final chance period given to her by Deputy Chief Hall.  See Defendant's Statement of Material Facts Not In Dispute (S.M.F.) at ¶ 11.  Lt. Johnson did not participate in the decision to terminate the Plaintiff.  In fact, Lt. Johnson was also terminated for his action on January 21, 2004.  See S.M.F. ¶ 21.

The Plaintiff also states in her affidavit that she understood that it was common practice that "minor violations" could be addressed by management with a "verbal warning."  However, there is no evidence other than the bald assertion of the Plaintiff that there was any distinction between violations of WMATA policy.  Besides, the Plaintiff was a probationary employee.  In addition, she was given one final chance to straighten up her act after being recommended for termination in her Mid-Year Performance Evaluation but failed to do so when, within 5 days of receiving a final chance from Deputy Chief Hall, she committed another workplace violation by admittedly having a combination Televison/Radio on her post.

The Plaintiff is incorrect in her affidavit that she was told by her mother, Deborah Miller, to report the incident immediately.  In her June 8, 2006 deposition, Deborah Miller was asked specifically if she told the Plaintiff to report the incident with Lt. Johnson to a supervisor.  Ms. Miller said, "No, I didn't."  See Exhibit 17, Deposition of Deborah Miller p. 48, ln. 8-11.

Plaintiff's Statement of Undisputed Facts also omits the findings of WMATA's Office of Civil Rights, which concluded that the Plaintiff violated WMATA polices and procedures for having a combination Televison/Radio on her post proving that the reason for Plaintiff's termination was not pretext.

Finally, Plaintiff's bald assertion that, "this reason is pretext as other similarly situated employees were not treated the same way" is also false. The Plaintiff was given a final chance to improve her job performance or be terminated. She committed a violation of WMATA policy just 5 days after receiving that warning by Deputy Chief Hall, therefore her termination cannot possibly be pretext. Plaintiff attempts to introduce statistics in its case to show that other employees were not terminated for having a Televison/Radio on post, however, the Plaintiff's statistics are flawed because they fail to take into account Plaintiff's serious infractions committed before January 21, 2004, her probationary status as a new hire, and the fact that the Plaintiff was conditionally terminated as a result of her Mid Year Performance Evaluation before January 21, 2004.

II. Plaintiff's *Quid Pro Quo* Argument

Plaintiff gives an incorrect statement of the law under a *quid pro quo* theory of sexual harassment.[1] In order to establish a *prima facie* case of sexual harassment under a *quid pro quo* theory, the Plaintiff must show that (a) she is a member of a protected class, (b) she was subject to unwelcome overtures because of her sex, (c) and she suffered a tangible job detriment as a result of her refusal to submit to the demand of the supervisor. See Williams v. Verizon Washington, D.C., Inc. 266 F.Supp2d.107,120 (D.D.C. 2003). Essentially, in order for a plaintiff to prevail, she must show that there is a causal connection between her refusal to submit to a supervisor's demand and an adverse employment action. See Burlington Indus., Inc. v. Ellerth,

---

[1] It should be noted that the case cited in Plaintiff's motion, Pacheco v. New Life Bakery, Inc., 187 F.3d 1063 (9th Cir. 1999) refers to an order withdrawing the opinion and ruling that the Petition for rehearing in that case was dismissed as moot. There is no discussion of law in that order. The underlying case, cited as Pacheco v. New Life Bakery, Inc., 187 F.3d 1055 (9th Cir. 1999) is red-flagged by Westlaw and is no longer considered good law and has been overturned.

524 U.S. 742, 753-54 (1998).  See also Williams at 120. (quoting Gary v. Long, 59 F.3d 1391, 1395 (D.C.Cir. 1995)) (to prove *quid pro quo* sexual harassment, adverse consequences must follow as a result of employee's refusal to submit to sexual advances.)

Upon such a showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged adverse action.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-4 (1973).  If an employer states a legitimate non-discriminatory reason for the discipline, the employee must prove that the stated reason is pretext.  See McDonnell Douglas at 804-5.

The Plaintiff cannot make a prima facie case of *quid pro quo* sexual harassment because she cannot show a causal connection between her refusal to submit to Lt. Johnson's demand and her termination.  In addition, she cannot show that WMATA's reasons for terminating her employment were pretextual.

The Plaintiff was terminated from her SPO position with WMATA for her admitted violation of General Post Instruction No. 10, which prohibited Television/Radio combinations on post.  Lt. Johnson observed the Plaintiff's violation of that post instruction before the alleged overture to the Plaintiff.  The Plaintiff admitted to her violation of Instruction No. 10 in a statement written by her prior to the alleged overture to the Plaintiff.  Therefore, the Plaintiff cannot show that she was terminated for refusing to submit to Lt. Johnson's overture because the violation of WMATA policy, for which she was terminated for, occurred before Lt. Johnson allegedly made that overture.

Deputy Chief Hall gave the Plaintiff a final chance to improve her job performance by overriding termination recommendations made by Metro Transit Police Lt. Tisdale and Metro Transit Police Captain Jerri Lee. Special Police Lt. Johnson was not one of those supervisors.  At

the time of the incident in question, the Plaintiff had been told already, in writing, that any further rule violations would lead to her termination.

The Plaintiff ignored Deputy Chief Hall's warning by violating General Post Instruction No. 10 only 5 days later. The Plaintiff admitted to the violation and has acknowledged that the violation occurred before Lt. Johnson allegedly propositioned her. See S.M.F. at ¶¶ 14. There is no evidence that Lt. Johnson recommended the Plaintiff's termination or participated in any way in the decision to terminate the Plaintiff. In fact, Lt. Johnson was himself terminated based on his conduct on January 21, 2004 and was in no position to influence the decision to terminate the Plaintiff. Rather, the undisputed evidence shows that Deputy Chief Hall decided to terminate the Plaintiff because of her admitted violation of the General Post Instruction No. 10. The Plaintiff has not produced any evidence, other than the Plaintiff's bald assertions in her affidavit, that the Plaintiff's termination was for any other reason other than her violation of the post rules on January 21, 2004, and her direct disobedience of Deputy Chief Hall's final warning.

The Plaintiff cannot show that WMATA's legitimate, non-discriminatory reason to terminate her was pretextual because she admitted to the very violation for which she was terminated. See Williams at 122 (Plaintiff cannot show that employer's legitimate, non-discriminatory reason for her suspension and termination was pretextual because she admitted to engaging in the conduct for which she was disciplined.) See also Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180. 1183 (D.C.Cir. 1996)(Reason for discipline must be "phony.")

The Plaintiff cannot assert that her termination was pretext because she would have been terminated regardless. Besides, whether Lt. Johnson made a sexual overture to the Plaintiff does not shield the Plaintiff from discipline that is not only warranted, but necessary given that Plaintiff was warned by Deputy Chief Hall that she would be terminated for another violation.

Plaintiff seeks to obtain immunity from termination based on her extensive rules violations because of Lt. Johnson's wrongful conduct, thus trying to improve her situation. This is inconsistent with Title VII law. One of the purposes "of Title VII is to put a plaintiff in the same position he/she would have been in had the discrimination not occurred, not in a better position." See Harper v. Godfrey Co., 45 F.3d 143, 149 (7th Cir. 1995). There, the court noted that, regardless of whether the discrimination had occurred, plaintiffs would have been fired in early 1987 for their misconduct and accordingly disallowed their reinstatements. Similarly, in Iannone v. Frederic R. Harris, Inc., 941 F. Supp. 403, 411-412 (S.D.N.Y. 1996), the court noted that "Title VII plaintiffs should not be made more than whole; that is, they should not receive a windfall." Accord, Duncan v. WMATA, 425 F.Supp. 2d 121, 128, fn. 3 (D.D.C. 2006).

Therefore, the Plaintiff fails to establish a prima facie case of *quid pro quo* sexual harassment because there is no evidence of a causal connection between her refusal to submit to Lt. Johnson's overture and her termination. Alternatively, the Plaintiff cannot show that WMATA's legitimate, non-discriminatory reason for her termination was pretextual.

III. Hostile Work Environment

The Plaintiff was not subject to a hostile work environment because she only alleges a single episodic event that was neither continuous, concerted nor pervasive to have altered the terms and conditions of Plaintiff's employment.

Although no affirmative defense is available when a supervisor's harassment culminates in a tangible employment action such as a discharge, demotion or undesirable reassignment, an employer may defend against a showing of hostile work environment caused by sexual harassment by demonstrating that there was no hostile work environment. See Williams at 116.

Incidents of environmental sexual harassment "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." See Faragher v.Boca Raton, 524 U.S. 775, 787 (1998).  In order to determine if an environment is sufficiently hostile or abusive, the lower courts must look at all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." See Id. at 787-88.  "Such conduct must be extreme to amount to a change in the terms and conditions of employment." See Id. at 788.

The Plaintiff has not presented evidence of any continuous, concerted and/or pervasive incidents of a hostile work environment that can be said to have altered the terms and conditions of her employment.  In fact, the plaintiff only alleges a single episodic event, namely, the proposition by Lt. Johnson on the evening of January 21, 2004.

The issue of vicarious liability on behalf of WMATA cannot be reached because the Plaintiff has not shown that there existed a hostile work environment that altered the terms and conditions of the Plaintiff's employment with WMATA.

IV. Retaliation

Plaintiff's allegation that her termination was in retaliation for filing her complaint for sexual harassment fails because she cannot show a causal connection between her engagement in statutorily protected activity and her termination.

Plaintiff argues that since the Plaintiff was officially terminated in June of 2004, this proves retaliation on behalf of WMATA.  However, the Plaintiff's allegation fails because her

termination was contemplated before Lt. Johnson ever made his alleged overture on January 21, 2004.

WMATA made the decision to initially terminate the Plaintiff's employment in her Mid-Year Performance Evaluation, which was discussed with the Plaintiff on January 16, 2004. See S.M.F. at ¶ 11. WMATA decided to forestall final action if the Plaintiff avoided any further rule violations. The contingent decision to terminate the Plaintiff was made by Deputy Chief Hall, a full 5 days before the alleged overture by Lt. Johnson and 13 days before the Plaintiff complained to the Office of Civil Rights.

The record demonstrates that Deputy Chief Hall warned the Plaintiff that another disciplinary action in her file within a 90-day period would result in her termination. See S.M.F. at ¶ 12. Plaintiff's immediate supervisor, Deputy Chief Hall, did not immediately discharge the Plaintiff because he was asked not to take any disciplinary action against the Plaintiff pending the outcome of the investigation by WMATA's Office of Civil Rights. The decision to terminate the Plaintiff was finalized after the Office of Civil Rights completed its investigation, showing that there was evidence that the Plaintiff violated "other WMATA polices and/or procedures" and that the Office of Civil Rights was forwarding those findings to Deputy Chief Dan Hall and Chief Polly Hanson for appropriate response and action. See S.M.F. at ¶ 20.

In order for the Plaintiff to establish a *prima facie* case of retaliation, the Plaintiff must show that (1) she engaged in statutorily protected activity; (2) her employer took an adverse personnel action against her; and (3) a causal connection between the two exists. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) See also Williams at 122. In addition, claims of retaliation are also governed by the McDonnell Douglas burden-shifting framework in that once a prima facie case of retaliation is established, the burden of production shifts to the

employer to articulate a legitimate, nondiscriminatory reason for the adverse action. See Holbrook v. Reno, 196 F.3d 255, 263 (D.C.Cir. 1999). See also Duncan v. WMATA, 425 F. Supp.2d 121 (D.D.C. 2006).

An adverse employment action that follows fast on the heels of an employee's protected activity may establish causation in certain circumstances, however, employers need not suspend previously planned adverse employment actions upon discovering that the Plaintiff has engaged in statutory protected activity, "and their proceeding along lines previously contemplated, through not yet definitively determined, is no evidence whatever of causality." Breeden at 272. Accord, Duncan v. WMATA at 127.

Under Breeden, so long as an employer takes steps to terminate an employee before he or she engages in protected activities, the Plaintiff cannot establish retaliation, even through the termination does not become final until well after those protected activities have begun. See Duncan at 128.

The Plaintiff is unable to show that the legitimate, non-discriminatory reason for her termination was pretext. See Holbrook at 263. Because the Plaintiff admitted to violating General Post Instruction No. 10, WMATA's reason for terminating the Plaintiff was not pretext and the Plaintiff cannot offer any evidence that the decision to terminate her was pretext. See also Williams at 123. (Employee cannot rebut employer's non-retaliatory reasons for adverse action because the employee admitted to violation of work rules and insubordination that was the reason for the adverse employment action taken.)

Therefore, the Plaintiff cannot establish a prima facie case of retaliation because the decision to terminate her was substantiated before the alleged overture by Lt. Johnson and WMATA's non-retaliatory reason for terminating the Plaintiff was not pretextual.

V. Conclusion

Plaintiff's Motion for Summary Judgment should be denied because she cannot establish a *prima facie* case of *quid pro quo* sexual harassment because there is no causal connection between her refusal to submit to Lt. Johnson's sexual overtures and her eventual termination. Plaintiff cannot show that WMATA's legitimate, non-discriminatory and non-retaliatory reason for terminating her employment was pretext. The Plaintiff cannot show a causal connection between her engagement in statutory protected activity and her termination, because the decision to terminate the Plaintiff was contemplated, and in process, before the Plaintiff engaged in statutory protected activity. Finally, the Plaintiff has not presented any evidence of a hostile work environment that was sufficiently continuous, concerted, and pervasive enough to have altered the terms and conditions of Plaintiff's employment.